No. 5.—Gideon Copenhaven, plaintiff in error, *vs.* The State of Georgia defendant.

[1.] If a party be ruled into a trial when it appears from the facts stated in the bill of exceptions that he was entitled to a continuance, the judgment obtained against him, will, for that cause, be reversed, and a new trial ordered.

[2.] The defendant against whom a bill of indictment was found, and who was put upon his trial, the next day moved a continuance of the cause till the next term, or a postponement for a few days, to obtain the testimony of two witnesses, whose names were set forth in the affidavit, and who resided in the State, and by whom he expected to prove an *alibi. Held*, that it was error in the Court not to allow time to procure the evidence—the facts contained in the oath of the party demonstrating the materiality of the proof.

[3.] The Penal Code of this State is liberal in granting continuances in criminal prosecutions.

[4.] The opinion of the presiding judge as to the guilt of the accused, cannot be made the ground of depriving him of the clear legal rights guarantied to him by the laws of the land.

[5.] Criminal Courts should be doubly guarded whenever notorious offenders are arraigned before them; the greater the crime, the greater the temptation and danger of being betrayed into error.

[6.] The law as to *triers* stated and expounded.

Indictment for Burglary in Monroe Superior Court. Tried before Judge STARKE, March Term, 1853.

The defendant in this case being arraigned, and having plead not guilty, moved a continuance on the same grounds as those taken in the case of Roberts *vs.* The State (No. 4 *suprie*) with the additional ground that he had absent witnesses residing in Murray county, by whom he could prove an *alibi.* The motion to continue was overruled, when defendant moved to postpone the case to Monday of the second week of the term, that he might send for the witnesses in Murray county. This also the Court refused, and the trial proceeded.

The first juror being put on, the prisoner having answered negatively the questions prescribed by the Penal Code, triers were demanded by the prisoner, who being called upon to name a trier, nominated Robert S. Lanier, upon which the Court named W. K. DeGraffenreid, both of whom resided out of the

county of Monroe.   The first juror being pronounced competent, was sworn in chief, and the next was called, and also put upon triers, and the Court called on prisoner's counsel to select one, which they declined to do ; on which the Court discharged Mr. Lanier, and sent out Mr. DeGraffenreid with the first juror, to try the second, whom they declared competent, and who was sworn in chief, and the two jurors tried the next one called, &c.

When the jury were all chosen and sworn, prisoner's counsel objected to the panel, on the ground that the triers who were first selected as above stated, resided out of the county.   The objection was overruled, and the prisoner was tried and convicted :

Whereupon, defendant excepts, and assigns error as follows :

That the Court erred 1st. In refusing to grant the continuance.

2nd. In refusing to postpone the case to another day of the same term.

3d. In holding that the jury had been properly and legally tried ; or if not, that the objection came too late.

LAMAR, HAMMOND and LOCHRANE, for plaintiff in error.

GLENN (representing THRASHER, Sol. Gen.) for defendant.

*By the Court.*—LUMPKIN, J. delivering opinion.

[1.] The record in this case, shows that the defendant was put upon his trial the day after the indictment was found.   He moved to continue the cause, on several grounds ; and among the rest, he swore that he expected to prove by Thomas Whitten, at the next term of the Court, that he was on his way to Georgia with horses, and lodged all night at the house of Whitten, in the county of Murray, in this State, on the night of the 14th of October, 1852 ; the alleged robbery having been committed in Monroe county, on the night of the 12th of the same month (some two hundred miles distant) : and he further swore, that he expected to prove at the next term, by one Fredric Short of the said county of Murray, that he (the accused) could

not have been at the place where the offence was committed, as the witness Short saw defendant at Whitten's house in Murray county the second night thereafter; and that the showing was not made for delay, but for the purpose of getting a fair trial.

[2.] The motion for a continuance for the term having been overruled, the prisoner's counsel made application to the Court to suffer the trial to be postponed till the Monday of the next week, to enable him to procure the attendance of Whitten and Short, which was refused, and the party was ruled to trial.

From the facts stated in the bill of exceptions, was not the defendant entitled to a continuance or postponement of the trial?

The 17th section of the 14th division of the Penal Code provides that "Every person against whom a bill of indictment is found, shall be tried at the term of the Court the indictment is found, *unless the absence of a material witness or witnesses,* or the principles of justice should require a postponement of the trial; and then the Court *shall* allow a postponement of the trial until the next term of the Court: and the Court shall have power to allow the continuance of criminal causes from term to term as often as the principles of justice may require, upon sufficient cause shown on oath." (*Cobb's New Digest,* 835, 836.)

[3.] Ours is a liberal code upon the subject of continuances in criminal cases. Under it an improper refusal of a continuance is matter of error. But with the latitude of discretion in allowing continuances from term to term as often as the principles of justice may require, the exercise of discretion *in favor of criminals* must be very *arbitrary* or very *erroneous,* to make the granting of continuances cause for reversal. Fortunately for prisoners at least, under our organization, this question can never perhaps be tested.

Was the testimony in this case *material?* I will not affirm that it was utterly irreconcilable with the guilt of the accused: but I will say, that if true, it made it very improbable that he perpetrated the crime at the time and place specified; and of its sufficiency to acquit, it was the peculiar province of the *jury*

and not of the *Court* to judge. That it was *material*, there cannot be a shadow of a doubt—and if so, then the Court was peremptorily required by the law of the land, the indictment having been just found, to postpone the trial until the next term of the Court; or at any rate, for a few days, to enable the party to obtain his proof. And upon this ground, the judgment of conviction must be reversed, and a new trial awarded.

[4.] For notwithstanding applications for continuances are ordinarily addressed to the discretion of the Court, and the presiding judge must in the main be left free to act in such a manner as to secure a *speedy* as well as *fair* trial, yet in the case made in this bill of exceptions, the Statute of the State is imperative, and he is bound to yield obedience to its mandate, whatever may be his opinion *as a man*, as to the guilt of the accused, or the falsehood in fact, of the showing which he makes, for the postponement of the trial.

[5.] Criminal Courts should be doubly guarded whenever notorious offenders are arraigned before them, for the greater the crime, the greater the temptation and danger of being betrayed into error, in their over anxiety to bring incorrigible culprits to merited punishment. Delay, which might well have been avoided, and increased expense and burden to the counties, are the usual consequences of this laudable, but intemperate zeal, to visit with exemplary rigor, these daring and desperate felons.

[6.] There was some irregularity in the manner of selecting the jury; and although it may be well enough to correct it, to prevent these departures from growing into a precedent, still we should not esteem it good cause for granting a re-hearing. Our object will be best accomplished, by stating the correct practice, as it is to be gathered from the standard writers on criminal law.

Challenge to the favor is left to the discretion of triers.— These do not exceed two, unless by the consent of the prosecutor and the defendant, or some special cause is alleged by one of them, or where one juror is sworn, and two triers appointed with him. If the challenge be made to the first juror, of course

before any one has been sworn, then the Court will direct two indifferent persons, *taken from the by-standers*, to try the question, and if they find the party challenged indifferent, he will be sworn, and join with the triers in determining the next challenge. But when two jurors have been found impartial, and have been sworn, then the office of the triers will cease, and every subsequent challenge will be referred to the decision of the jurymen. If the prisoner challenge ten, and the State one, and the twelfth be sworn, one trier shall be chosen by each party, and added to the jurymen sworn, and the challenges be referred to their decision. But if several be sworn, and the rest challenged, the Court may assign any two of the persons sworn, to determine the challenges. To the triers thus chosen, no challenge can be admitted.

The triers being thus chosen, the following oath is administered to them: "You shall well and truly try whether A. B. (the juror challenged) stand indifferent between the parties to this issue, so help you God." The trial then proceeds by witnesses before them; and the truth of the matter alleged as cause of challenge, must be made out to the satisfaction of the triers. One witness to establish the cause of challenge is sufficient. The triers, also, may examine the juryman challenged, upon his *voir dire* as to the leaning of his affections, or whether he hath given his opinion before hand, and ask all other questions which may enable them to test his impartiality, provided they do not interrogate him as to facts and circumstances, which tend to his infamy or disgrace.

It is said that if the *array* be challenged, it lies in the discretion of the Court how it shall be tried; *that sometimes it is done by two attorneys;* and it was this practice, which likely suggested the idea of trying a challenge to a particular juror, in the present case, in this way. More need not be said on this subject.

Judgment reversed.